Filed 2/25/25  Lu v. Tung CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JOSEPHINE LU, | |
| Plaintiff and Respondent, | G063414 |
| v. | (Super. Ct. No. 30-2020-01164117) |
| DEREK C. TUNG, et al., | |
| Defendants and Appellants. | O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, R. Shawn Nelson, Judge. Affirmed as modified.

Derek C. Tung, in pro. per., for Defendants and Appellants.

Revere & Wallace and Frank Revere for Plaintiff and Respondent.

In 2018, Josephine Lu hired Derek C. Tung, an attorney, and his law firm, the Law Office of Tung & Company, Inc., (collectively Tung) to represent her in the matter of the estate of her former husband. The following year, she filed a complaint against Tung for breach of contract, unjust enrichment, and legal malpractice. Following a bench trial, the court found in favor of Lu and against Tung. Judgment was entered for $29,977.09, the amount Lu paid Tung for his services. The court also awarded Lu prejudgment interest, as well as costs.

Tung contends the judgment must be reversed because the court made prejudicial evidentiary and instructional errors and the doctrine of unclean hands barred Lu's recovery. We reject these contentions because Tung has not provided us with an appellate record sufficient to analyze them. We also disagree with Tung's arguments the court erred by ordering disgorgement of the fees Lu paid and the disgorgement constitutes a constitutionally excessive or punitive award. We do, however, order the judgment modified to correct a mathematical or typographical error. In all other respects, we affirm.

FACTS[1]

In 2012, Lu and her husband Andrew Wang divorced. However, among family and friends, Lu continued to claim she was Wang's spouse. From 2016 to Wang's death in September 2018, Lu and Wang lived together in their Tustin residence. (To avoid confusion with other individuals sharing the same surname, Wang will be referred to hereafter as decedent. No

---

[1] The parties stipulated to several facts for the purpose of trial, and these stipulated facts were considered by the court in rendering its decision.

2

disrespect is intended.) Decedent was survived by his siblings: G. Hui, E. Chang, P. Wang, and J. Wang.

In December 2018, Lu retained Tung "as her attorney for legal representation" concerning decedent's estate, and they entered into a written agreement. Lu advised Tung she was decedent's former wife and decedent had surviving siblings. Lu did not have the ages and addresses for decedent's siblings. Lu called and sent text messages to decedent's siblings concerning the probate of decedent's estate and requested contact information.

By July 2019, Lu and Tung remained unable to obtain the ages and addresses of decedent's siblings. On Lu's behalf, Tung filed a petition for probate and letters of administration in the Superior Court of California, County of Orange (July petition). The July petition identified Lu as decedent's surviving spouse, indicated siblings survived decedent, but did not include the names, addresses, or ages of decedent's siblings. Thus, probate notices were not mailed to decedent's siblings.

On August 7, 2019, Hui, one of decedent's siblings, filed a petition for probate in the Superior Court of California, County of Los Angeles.

On August 19, 2019, Lu gave a copy of Hui's petition to Tung. Tung prepared and filed an objection to Hui's petition on behalf of Lu.

On September 6, 2019, the Los Angeles County court dismissed Hui's petition. The Orange County court signed the order appointing Lu administrator of decedent's estate.

On September 9, 2019, Lu sent Tung "a 12 points statement to support her 'spousal status to [decedent].'"

On September 24, 2019, one of decedent's siblings, J. Wang, moved to vacate the order granting Lu letters of administration. The following day, Lu signed a declaration in support of her opposition to

J. Wang's motion, stating that when she filed the July petition, the only contact information she had for decedent's siblings was their telephone numbers.

In October 2019, Tung filed an amended petition for letters of administration (October petition). In this petition, Lu was identified as decedent's "putative spouse/domestic partner." The October petition also included decedent's surviving siblings' names and addresses, and the notices were mailed to decedent's siblings.

In November 2019, the probate court, acting under Probate Code section 8007, found Lu had perpetrated extrinsic fraud on the court. The probate court vacated the order appointing Lu administrator of decedent's estate and granted J. Wang administration of the estate.

By December 2019, Lu had paid Tung $29,977.09 for "services in the Probate Matter."

In June 2019, decedent's estate was valued at $1,143,330. Under Probate Code section 10800, an administrator's fee for ordinary services in an estate valued at this amount is $24,433.30. In 2021, an inventory and appraisal filed by J. Wang indicated the estate's value was $946,250. The administrator's fee for an estate with this value is $21,925.00.

PROCEDURAL HISTORY

In October 2020, Lu filed a complaint against Tung for breach of contract, unjust enrichment, and legal malpractice. The complaint alleged Tung "negligently" filed the July petition, which erroneously identified Lu as decedent's surviving spouse and did not identify the decedent's surviving siblings. As to the legal malpractice claim, the complaint alleged Tung had "acted negligently and below the standard of care for practitioners in probate in the representation of [Lu] by" "[h]aving [Lu] designated as a person

4

committing extrinsic fraud on the court," "[r]epresenting to the court that the Decedent was survived by issue of deceased parents and then identifying these persons as Decedent's dead father . . . and dead mother . . . ," and "[c]harging [Lu] fees contrary to the provisions of Probate Code section 10800." The complaint also alleged Tung had failed to: "[G]ive the Decedent's siblings notice of [Lu]'s Petition for Letters of Administration;" and "[A]llow [Lu] to administer the Decedent's estate and thereby earn the administrator's fees as provided for in Probate Code section 10800." The Law Office of Tung & Company, Inc. filed an answer denying the complaint's allegations. (Tung and his law office filed separate answers; only the one filed by the law office is included in the appellate record.)

Lu filed a motion for summary judgment, but it was denied by the trial court. Tung then filed a motion for summary judgment, and it too was denied by the court.

A bench trial was conducted in November 2023. Neither party testified at the hearing, relying instead on the stipulated facts. Judgment was entered in favor of Lu and against Tung for $29,977.09. Lu was awarded prejudgment interest totaling $9,269.00 and court costs in the amount of $3,859.55.

Tung appealed, and in designating the record on appeal, he elected to proceed with a settled statement as a record of the oral proceedings in the trial court (Cal. Rules of Court, rule 8.137). He filed a proposed settled statement, to which Lu objected. The court prepared a settled statement, which provides in full:

"1) On December 4, 2018 defendant [T]ung knew at the time he retained Plaintiff Lu to represent her in the probate matter The Estate of Andrew Wang that Plaintiff was divorced from decedent Wang.

5

"2) On July 12, 2019, defendant Tung filed a petition on behalf of plaintiff Lu, [for] letters of administration in the Superior Court of the State of California County of Orange case number 30-2019-01082761. This petition identified plaintiff Lu as decedent[']s surviving spouse. Defendant Tung knew at the time of this filing the information was false. The petition further erroneously failed to identify siblings that survived decedent. Defendant Tung knew at the time of the filing there were siblings that had survived decedent, and that this representation to the court was false.

"3) On November 21, 2019 the probate judge in Orange County found plaintiff Lu had perpetrated extension [*sic*] extrinsic fraud on the court by failing to give proper notice to decedent[']s siblings. Defendant Tung knew of the fraud and willingly facilitated the same by knowingly assisting his client in filing false pleadings with the court.

"4) Defendant Tung, violated his ethical and professional obligations to his client and the court. As a member of the bar[,] Defendant Tung was obligated to advise his client that filing false documents is not acceptable, nor allowed under any circumstances. Tung admitted to the court he knowingly helped his client defraud the court because his client 'insisted'. Defendant Tung's duty was to withdraw from representing a client that insisted on filing false documents with the court. Defendant made it crystal clear to the court under oath he believed his duty was to assist his client in defrauding the court if that was what she wanted to do.

"5) Defendant Tung is entitled to no fees for willingly assisting his client in perpetrating a fraud on the court and must disgorge any charged in this matter."

6

DISCUSSION

Tung makes several arguments as to why the judgment must be reversed, but none have merit.

I.

TUNG HAS NOT PROVIDED A RECORD SUFFICIENT

TO CONSIDER SEVERAL OF HIS CLAIMS

We begin with "a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) "'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." [Citation.] "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'" (*Id.* at p. 609.) "'In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided.'" (*Ibid.*)

Here, the absence of a reporter's transcript or suitable substitute requires us to resolve many of Tung's arguments against him. Tung contends the court made multiple evidentiary and instructional errors during the

7

bench trial. He asserts the court (1) admitted improper opinion testimony; (2) excluded defense evidence; (3) permitted testimony and argument that disgorgement of fees earned was required by the "Contract and/or Statute"; and (4) "refused to adequately instruct its rulings." All of these claims fail because Tung has not provided us with a record sufficient to consider them.

Tung's assertions of evidentiary errors must be rejected because the record does not allow meaningful review. In designating the record of the oral proceedings before the court, Tung opted to proceed with a settled statement. Tung's proposed settled statement indicates no testimony was presented at the bench hearing and no objections were made. The settled statement approved by the court does not discuss any evidentiary rulings. Accordingly, we reject his contentions the court committed evidentiary errors. (See *Jameson v. Desta, supra*, 5 Cal.5th at p. 609.)

Similarly, we reject Tung's contentions the court committed prejudicial error by refusing instructions he submitted concerning "the court's trial-within-a-trial duties" and equitable factors. The appellate record does not include Tung's proposed instructions or the respective court rulings. In his proposed settled statement, Tung indicated his appeal was not based on a disagreement with the court's ruling on a jury instruction. Again, Tung's argument is forfeited because he has not provided an adequate record to review his appellate claim of instructional error.

Tung also contends "the compensatory award must be [r]eversed because [the] doctrine of unclean hands or in pari delicto was a complete defense to this legal malpractice action." (Boldface, capitalization, & italics omitted.) We reject this claim because Tung does not cite to any portion of the appellate record demonstrating he raised this defense in the trial court or that it was considered below. ""If a party fails to support an argument with

8

the necessary citations to the record, . . . the argument [will be] deemed to have been waived.”’” (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.) The appellate record does not contain a ruling by the trial court as to the alleged defense of unclean hands. Tung has failed to demonstrate error and his contention is rejected.[2]

## II.

### DISGORGEMENT OF TUNG’S FEES WAS NOT AN ABUSE OF DISCRETION

Tung contends the judgment must be reversed because it is “based on legal misconceptions concerning the breach of contract.” (Capitalization & boldface omitted.) The exact nature of the “legal misconceptions” to which he is referring is difficult to discern. He asserts there is no support in the Probate Code for disgorgement when a petitioner proves a person violated a statute. This argument is off the mark as disgorgement is an equitable remedy. Its objective is “‘to eliminate the possibility of profit from conscious wrongdoing,’” which “‘is one of the cornerstones of the law of restitution and unjust enrichment.’” (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 398.)

Tung contends there are no published decisions in California discussing disgorgement of fees paid to an attorney for work performed. He is mistaken. Nearly a century ago, the California Supreme Court warned: “[A] court may refuse to allow an attorney any sum as an attorney’s fee if his relations with his client are tainted with fraud. ‘Fraud or unfairness on the part of the attorney will prevent him from recovering for services rendered;

---

[2] Tung’s argument the doctrine of unclean hands bars Lu’s recovery relies, in part, on an unpublished California Court of Appeal opinion, a violation of California Rules of Court, rule 8.1115(a).

as will acts in violation or excess of authority, and acts of impropriety, inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties.'" (*Clark v. Millsap* (1926) 197 Cal. 765, 785.) More recently, the California Supreme Court explained: "As California courts have often noted, the rule governing attorney forfeiture derives primarily from the general principle of equity that a fiduciary's breach of trust undermines the value of his or her services. [Citations.] 'The remedy of fee forfeiture presupposes that a lawyer's clear and serious violation of a duty to a client destroys or severely impairs the client-lawyer relationship and thereby the justification of the lawyer's claim to compensation.' [Citation.] Forfeiture also serves as a deterrent to misconduct, and it avoids putting clients to the task of proving the harm stemming from the lawyer's conflict of interest when the extent of the harm may be difficult to measure. [Citation.] [¶] The degree to which forfeiture is warranted as an equitable remedy will necessarily vary with the equities of the case." (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 89–90 [attorneys' ethical breach rendered engagement agreement unenforceable in its entirety].)

"[T]he propriety of granting equitable relief in a particular case . . . generally rests upon the sound discretion of the trial court exercised in accord with the facts and circumstances of the case." (*Hicks v. Clayton* (1977) 67 Cal.App.3d 251, 265.) Where an attorney's fee is concerned, a trial court must exercise its discretion to fashion a remedy that allows the attorney as much or as little value, "as equity warrants, while preserving incentives to scrupulously adhere to the Rules of Professional Conduct." (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc., supra,* 6 Cal.5th at p. 90.) We find no abuse of the court's discretion here.

Tung makes several arguments relating to punitive damages. He characterizes disgorgement as a punitive penalty and contends the "punitive damage judgment" entered against him must be reversed because it is constitutionally excessive and violates due process. We, like Lu, are "perplexed" by Tung's contentions concerning punitive damages as there were none in this case. In his reply brief, Tung asserts, without citation to authority, "the entire fees disgorgement is in fact a punitive award." He is mistaken. Disgorgement is an equitable remedy, not punitive. (See *Center for Healthcare Education & Research, Inc. v. International Congress for Joint Reconstruction, Inc.* (2020) 57 Cal.App.5th 1108, 1125 [disgorgement is an equitable remedy].) Tung's arguments concerning punitive damages are rejected as meritless.

III.

### THE JUDGMENT TOTAL MUST BE MODIFIED

Judgment was entered in favor of Lu and against Tung for the sum of $29,977.09. The court also awarded $9,269.00 in prejudgment interest to Lu. Thus, the total is $39,246.09 (rather than $39,266.09 as stated in the judgment). Accordingly, we order the judgment modified by striking the total judgment amount of $39,266.09 and inserting in its stead, $39,246.09. (*Center for Healthcare Education & Research, Inc. v. International Congress for Joint Reconstruction, Inc., supra*, 57 Cal.App.5th at p. 1130 [appellate court may modify judgment and affirm it rather than remand for new determination].)

### DISPOSITION

We direct the trial court to modify the judgment to reflect the total judgment entered in favor of Lu and against Tung and his company is

11

$39,246.09, plus court costs of $3,859.55. In all other respects, the judgment is affirmed. Lu shall recover her costs on appeal.

                                        MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.